UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DENNIS W. R.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. 3:22-cv-05424-TMC

**ORDER AFFIRMING DECISION DENYING BENEFITS**

Plaintiff Dennis R. seeks review of the denial of his applications by Defendant, the Commissioner of Social Security, for Disability Insurance Benefits ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Plaintiff contends the Administrative Law Judge ("ALJ") erred by rejecting his symptom testimony and improperly evaluating the medical opinion evidence. Dkt. 16. As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

I.     PROCEDURAL HISTORY

Plaintiff initially filed applications for DIB and SSI in January 2018, alleging a disability onset date of May 22, 2017. Administrative Record ("AR")[1] 148–49, 160–61, 174–75, 189. After

---

[1] The Administrative Record in this case refers to Dkt. 14.

ORDER AFFIRMING DECISION DENYING
BENEFITS - 1

his applications were denied upon initial review and on reconsideration, Plaintiff requested a hearing before an ALJ. AR 159, 170, 186, 200, 220.

ALJ Erickson held a hearing for Plaintiff's claims in July 2019 and issued a decision in August 2019, finding Plaintiff not disabled from Plaintiff's alleged onset date through August 28, 2019. AR 12–145. In August 2020, Plaintiff sought judicial review of the ALJ's decision within this Court. AR 1482–83. While Plaintiff's appeal was pending, Plaintiff reapplied for benefits and was found disabled beginning August 29, 2019. AR 1512–49. In June 2021, this Court reversed ALJ's Erickson's August 2019 decision and remanded the case for further proceedings. AR 1502–11.

ALJ Erickson held a second hearing on remand in February 2022 and issued a decision in April 2022, finding Plaintiff not disabled from his alleged onset date of May 22, 2017 through August 28, 2019, the relevant period at issue. AR 1401–46. Plaintiff now seeks this Court's review of the ALJ's April 2022 decision.

## II. LEGAL STANDARD

**A.  Standard of Review**

This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The Court must examine the record but cannot reweigh the evidence or substitute its judgment for the ALJ's. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When evidence is susceptible to more than one interpretation, the Court must uphold the ALJ's interpretation if rational. *Ford*, 950 F.3d at 1154. Also, the Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

B.     The "Disabled" Determination

To determine whether a claimant is disabled within the meaning of the Social Security Act (and, therefore, eligible for benefits), an ALJ follows a five-step sequential evaluation pursuant to 20 C.F.R. §§ 404.1520(a) and 416.920(a): (1) the claimant must not be engaged in "substantial gainful activity"; (2) the claimant's impairment or combination of impairments must be severe enough to significantly limit the claimant's "physical or mental ability to do basic work activities"; (3) the claimant's impairment(s) must meet or equal the criteria of an impairment in the "Listing of Impairments" ("Listings"); (4) the claimant's residual functional capacity ("RFC") is assessed and the claimant must not be able to perform their "past relevant work"; and (5) the claimant must not be able to make an adjustment to other work. *See Ford*, 950 F.3d at 1148–49 (same). If the claimant fails to make the required showing at any of these steps, the ALJ's inquiry ends, and the claimant is found not to have a disability under the Social Security Act. The burden of proof is on the claimant at steps one through four but shifts to the agency at the fifth step to prove that "the claimant can perform a significant number of other jobs in the national economy." *Id.* at 1149 (citation omitted).

### III.     DISCUSSION

In this case, the ALJ determined that: (1) Plaintiff had not engaged in substantial gainful activity; (2) Plaintiff's impairments—lumbar spine degenerative disc disease and degenerative joint disease; right knee chondromalacia and cysts, with status post-surgery; left shoulder pain; major depressive disorder; anxiety disorder; and posttraumatic stress disorder—were severe enough to significantly limit the claimant's "physical or mental ability to do basic work activities"; (3) Plaintiff's impairments did not meet or equal the criteria of an impairment in the Listings; (4) Plaintiff had the RFC to perform light work with limitations based on his evaluation

of Plaintiff's symptom testimony and the medical opinion evidence; and (5) there were jobs that existed in significant number in the national economy Plaintiff could have performed. AR 1406–24. Therefore, the ALJ concluded that Plaintiff was not disabled. AR 1424.

Plaintiff challenges the ALJ's evaluation of his symptom testimony and the medical opinion evidence. Dkt. 16. After reviewing the record, the Court finds that the ALJ's evaluations were supported by substantial evidence. Accordingly, the Court affirms the ALJ's decision.

**A.      Plaintiff's Symptom Testimony**

Plaintiff testified[2] he was unable to work because his knee swelled and he experienced pain from his hip to his toes. AR 95. He said he could only sit, stand, or walk for 15 to 20 minutes, and he had to elevate his leg every hour. AR 96, 125–26. He also testified to having lower back pain that radiated down to his right foot. *Id*. He testified his left shoulder frequently went numb. AR 96. He stated he could use his hands for 15 to 20 minutes before his arms went numb. AR 127–28. He stated he could drive to his medical appointments and perform household chores, such as washing dishes and cooking, but it took him hours to complete them because he needed to rest. AR 109–10, 114. He stated he had "bad days" three days out of the week where he spent most of his time in bed except for when he needed to attend to his dog. AR 115–17. He explained he had undergone steroid injections and participated in physical therapy, but he did not find them effective. AR 96–97. As for his mental health, he testified to having anxiety, depression, and difficulties with concentrating. AR 102–03, 128–30.

Where, as here, an ALJ determines that a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there

---

[2]The testimony discussed here is from Plaintiff's July 2019 hearing. AR 42–145. Plaintiff had another hearing with the ALJ in February 2022, but during this hearing, Plaintiff's attorney stated Plaintiff had nothing further to add to his previous testimony. AR 1444.

is no evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity "by offering specific, clear and convincing reasons for doing so." *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014). "The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

The ALJ first found objective medical evidence undermined Plaintiff's statements as to the severity of his symptoms. AR 1412–13. "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt*, 53 F.4th at 498. Here, in discounting Plaintiff's testimony about his physical symptoms, the ALJ cited an x-ray of Plaintiff's hip showing no evidence of fracture or dislocation and a negative x-ray of Plaintiff's left shoulder showing no fracture or malalignment. AR 1412 (citing AR 457, 580–81, 653, 1111). The ALJ also noted that though Plaintiff reported tenderness and pain in his back and hip, treatment notes show he had normal gait and normal range of motion with full strength and grossly intact sensation. AR 1412–13 (citing AR 461, 493, 496, 644, 2482, 2486, 2492, 2502).

The ALJ also found treatment notes showing improvement from medication and therapy undermined Plaintiff's testimony about the severity of his physical symptoms and the ineffectiveness of his treatment regimen. AR 1413–14. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [social security disability] benefits." *Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Here, the ALJ pointed to Plaintiff's self-reports of improvement with his knee, back, and shoulder after he underwent procedures and attended chiropractic sessions and physical therapy. AR 1413 (citing AR 639 ("[Plaintiff] estimates his pain is 30% improved

by PT and cortisone injection."), 651, 805, ("Reports that the pain he had before surgery has improved. He has even been doing some yard work with no pain."), 807, 861, 899 ("Client participated in a health and wellness walk around Seeley Lake trail to promote exercise . . ."), 1143). Given the records showing normal physical findings and treatment notes indicating improvement in Plaintiff's physical condition, the ALJ permissibly rejected Plaintiff's testimony regarding the severity of his physical symptoms based on its inconsistency with the record.

The ALJ provided similar reasoning in rejecting Plaintiff's testimony about his mental health symptoms. AR 1414–15. The ALJ acknowledged that Plaintiff at times had an anxious disposition with poor insight, memory, and concentration, but the ALJ also noted that throughout the relevant period, Plaintiff's treating sources observed he was alert, cooperative, pleasant with appropriate and euthymic mood, and with normal affect and concentration. AR 1414 (citing AR 456, 461, 491, 548, 552, 556). Plaintiff's treating sources often found his memory, insight, and judgment normal. AR 548, 552, 556, 560, 579, 640, 648. Plaintiff himself reported improvements in his anxiety due to changes to his medication and therapy. AR 489–91 (expressing desire to change medication in October 2017), 548 (stating he is coping better with his stressors because of medication and reporting therapy has been helpful in January 2018). By August 2019, Plaintiff reported that his "overall anxiety ha[d] come down despite ongoing stressors in his life, all of which he appear[ed] to be dealing with quite well." AR 2491.

"Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d at 1111. The ALJ's interpretation of the record is rational here, as treatment notes show that near the end of the relevant period, Plaintiff himself reported a level of improvement that negated his statements about the severity of his symptoms. As the ALJ's

ORDER AFFIRMING DECISION DENYING
BENEFITS - 6

findings are supported by the record, the Court finds the ALJ did not err in rejecting Plaintiff's testimony about his mental health symptoms.

The ALJ also found Plaintiff's statements describing his ability to perform daily activities undermined his testimony regarding his inability to perform work-related activities. AR 1412. An ALJ may reject a plaintiff's symptom testimony based on his daily activities if they contradict his testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Here, the ALJ focused on Plaintiff's ability to manage his self-care, perform household chores, walk, drive, shop in stores, manage his finances, and follow instructions. AR 1412. The Court does not find Plaintiff's activities of daily living a convincing reason to reject Plaintiff's testimony, as Plaintiff testified he was able to perform most of these activities and therefore his testimony was not necessarily contradictory in nature. However, because the ALJ was nonetheless able to provide at least one valid reason to reject Plaintiff's testimony and that reason is supported by substantial other evidence, any erroneous reasons proffered by the ALJ are rendered harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (including an erroneous reason among other reasons to discount a claimant's credibility does not negate the validity of the overall credibility determination and is at most harmless error where an ALJ provides other reasons that are supported by substantial evidence).

B.     **Medical Opinion Evidence**

For applications filed on or after March 27, 2017, medical opinion evidence from all medical sources is weighed according to the factors set forth in 20 C.F.R. §§ 404.1520c and 416.920c. *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022). Under the new regulations, ALJs must consider every medical opinion in the record and evaluate each opinion's persuasiveness,

with the two most important factors being "supportability" and "consistency." *Id.*; 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Supportability concerns how a medical source supports a medical opinion with relevant evidence, while consistency concerns how a medical opinion is consistent with other evidence from medical and nonmedical sources. *See id.*; 20 C.F.R. §§ 404.1520c(c)(1), (c)(2); 416.920c(c)(1), (c)(2). Under the new regulations, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

Plaintiff filed his applications after March 27, 2017, therefore the ALJ was required to evaluate the medical opinion evidence using the factors provided under the new regulations. *See* AR 148–49, 160–61, 174–75, 188–89. Plaintiff contends, however, that the ALJ failed to comply with these new regulations. Dkt. 16 at 10–11. The Court disagrees.

In evaluating the opinions of Dr. Lenhart, Dr. McCaw, Mr. Davis, ARNP, and Dr. McCormick, the ALJ looked into whether each medical source corroborated their opinions by citing to objective evidence, including their own examinations. *See* AR 1416–20. By doing so, the ALJ considered each opinion's supportability. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

Plaintiff also avers the ALJ failed to comply with the new regulations by finding some of the medical opinions regarding Plaintiff's mental health inconsistent with his mental status examinations throughout the record. Dkt. 16 at 10–11. Plaintiff argues that in doing so, the ALJ impermissibly interpreted raw medical evidence. *Id.* at 11. The Court disagrees with this argument as well. By looking into whether the medical opinions were "consistent with evidence from other medical sources and nonmedical sources in the claim," such as Plaintiff's mental status examinations, the ALJ considered their consistency. *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Plaintiff's argument that the ALJ failed to comply with the new regulations fails,

so the Court turns to whether the ALJ's supportability and consistency findings were supported by substantial evidence.

### 1.     Dr. Lenhart

Dr. Lenhart completed a questionnaire prepared by Plaintiff's attorney and wrote that Plaintiff suffered from a right knee "meniceal disorder" and a left "rotator cuff impingement." AR 1171. He opined that due to these conditions, Plaintiff needed to elevate his legs for approximately 10 minutes, every two hours, in a typical eight-hour period, and on an as-needed basis. *Id*. He also opined Plaintiff's conditions caused pain severe enough to interfere with his attention, concentration, and persistence for about 20 minutes every hour. AR 1172. He opined Plaintiff could stand/walk for about two hours, sit upright for about two hours, and needed to recline for less than two hours during an eight-hour workday. *Id*. He opined Plaintiff could not use his left upper extremities at all for reaching, holding, handling, or manipulating in an eight-hour workday, and his hands and arms for up to one-third of an eight-hour workday for reaching, holding, or manipulating. AR 1172–73. He further opined that Plaintiff's impairments would have resulted in absenteeism of three or more days per month on a more probable than not basis. AR 1173.

The ALJ first rejected Dr. Lenhart's opinion because it was "essentially a checkbox form" that lacked any citations to objective medical evidence. AR 1416. Typically, under the supportability factor, lack of relevant explanations supporting a medical opinion is a valid reason to reject that medical opinion. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). However, as one of Plaintiff's treating medical sources, Dr. Lenhart had familiarity with Plaintiff's condition and thus would have had treatment notes throughout the record that could have possibly supported his proposed limitations. *See Garrison*, 759 F.3d at 1013 (finding the ALJ erred in

rejecting opinions provided in a check-box from because they were "based on [the medical source's] significant experience with [claimant] and supported by numerous records"). Thus, in rejecting Dr. Lenhart's opinion for its lack of supportability, the ALJ erred.

However, the ALJ did not err in rejecting Dr. Lenhart's opinion for its inconsistency with Plaintiff's record. *See* AR 1416. The ALJ noted that in contrast with Dr. Lenhart's proposed limitations are Plaintiff's reports of improvement in his knee pain from surgery and medication and in his shoulder pain from treatment and physical therapy. AR 1416. As discussed, the records indicate Plaintiff's knee, back, and shoulder conditions improved after he underwent procedures, took medication, and attended chiropractic sessions and physical therapy. AR 639 ("[Plaintiff] estimates his pain is 30% improved by PT and cortisone injection."), 651, 805 ("Reports that the pain he had before surgery has improved. He has even been doing some yard work with no pain."), 807, 861, 899 ("Client participated in a health and wellness walk around Seeley Lake trail to promote exercise . . ."), 1143. These treatment notes undermine Dr. Lenhart's opinion, especially the portion stating Plaintiff could not lift his arms at all and that Plaintiff's impairments would lead to absenteeism of three days. The ALJ reasonably rejected Dr. Lenhart's opinion for its inconsistency with the record and did not err in doing so.

2.   Dr. McCaw

Dr. McCaw completed a psychological evaluation in October 2018 and opined Plaintiff had marked limitations in the following work activities: understanding, remembering, and persisting in tasks by following detailed instructions; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances without special supervision; learning new tasks; communicating and performing effectively in a work setting; maintaining appropriate behavior in a work setting; completing a normal work day and work

week without interruptions from psychologically-based symptoms; and setting realistic goals and planning independently. AR 1123–24. Dr. McCaw completed a second evaluation in August 2020 and provided similar limitations, but he did not opine that Plaintiff had marked limitations in learning new tasks and setting realistic goals and planning independently. AR 1819.

      The ALJ first rejected Dr. McCaw's opinions because they were not supported by the findings of his own mental status examination. AR 1418. The ALJ's reasoning is not convincing. Though Dr. McCaw did find Plaintiff cooperative and his speech, orientation, perception, fund of knowledge, abstract thought, and insight and judgment within normal limits, he also observed that Plaintiff required redirection in completing the interview and his memory and concentration were not within normal limits. AR 1125–26, 1820–21. These findings by Dr. McCaw support his opinions that Plaintiff had difficulties with remembering and persisting in his tasks. *See* AR 1123. The ALJ's reasoning is not supported by substantial evidence, therefore in rejecting Dr. McCaw's opinions for their lack of supportability, the ALJ erred.

      However, the ALJ did not err in rejecting Dr. McCaw's opinions for their inconsistency with other medical records. The evidence the ALJ relied on shows Plaintiff's mental status examinations were often normal, with good attention and memory. AR 914, 917. Early in the relevant period, Plaintiff was observed as non-focal, and he reported his medications were ineffective. AR 493, 496. However, with different medication and participation in therapy—both of which Plaintiff reported helpful for managing external stressors—Plaintiff was then consistently found alert and oriented with responsive affect, productive speech, intact memory and concentration, normal psychomotor skills, and fair insight and judgment. AR 552, 556, 560, 579, 640, 914, 917. These findings undermine Dr. McCaw's findings and his proposed

limitations. The ALJ reasonably rejected his opinions for their inconsistency with the record and did not err in doing so.

### 3. Mr. Davis, ARNP

Mr. Davis completed a questionnaire prepared by Plaintiff's counsel in April 2019. AR 1383–84. He wrote Plaintiff suffered from post-traumatic stress disorder and traits consistent with borderline personality disorder. AR 1383. He indicated Plaintiff suffered from symptoms that would interfere with his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. AR 1384. He opined Plaintiff's symptoms were severe enough to impact his ability to complete an eight-hour workday and would likely result in absenteeism. *Id.* Mr. Davis also provided a medical source statement in May 2019. AR 1385–87. He opined Plaintiff had marked limitations in certain areas in sustaining concentration and persistence and social interaction. AR 1386.

The ALJ first rejected both of Mr. Davis's opinions because they lacked citations to any objective evidence and support from treatment notes. AR 1419. But in doing so, the ALJ sidestepped Mr. Davis's treatment notes throughout Plaintiff's record that could reasonably support his proposed limitations. *See, e.g.*, AR 2373–2519, 2651–96. The ALJ, therefore, erred in rejecting Mr. Davis's opinions for this reason. *See Garrison*, 759 F.3d at 1013.

The ALJ, however, did not err in rejecting his opinions for inconsistency. In making this finding, the ALJ cited to the same treatment notes cited in the evaluation of Dr. McCaw's opinion. AR 1418–19. As discussed, Plaintiff's record includes normal mental status examinations that showed good attention and memory, and several treatment notes of Plaintiff's own reports of improvement from medication and therapy. AR 552, 556, 560, 579, 640, 914, 917, 971. These records undermine Mr. Davis's opinions in the same way they undermined Dr.

McCaw's. The Court similarly finds here that the ALJ reasonably rejected Mr. Davis's opinions for their inconsistency with the record and did not err in doing so.

4.   Dr. McCormick

Dr. McCormick completed a psychological evaluation in May 2019 and found Plaintiff exhibited significant deficits in attention, concentration, and memory and appeared to currently lack the ability to maintain focus, manage anxiety, adapt to changes, and synthesize new information. AR 1394, 1775. He opined these deficits "will likely severely limit [Plaintiff's] ability to function in the workplace" and he "appeared to lack necessary abilities to effectively and consistency work outside the home." *Id*. Dr. McCormick also provided a medical source statement and opined Plaintiff had marked limitations in several areas in understanding and memory, sustaining concentration and persistence, social interaction, and adaption. AR 1396–1400.

The ALJ rejected Dr. McCormick's opined marked limitations, stating that Plaintiff's memory deficits, as found by Dr. McCormick himself, did not warrant his proposed limitations. AR 1420. However, Dr. McCormick's opinions were not solely based on Plaintiff's memory, therefore in rejecting his opinions on this ground alone, the ALJ erred.

However, the ALJ did not err in rejecting Dr. McCormick's opinions based on their inconsistency with Plaintiff's record. AR 1420. As discussed, Plaintiff's record includes normal mental status examinations that show he also had good attention and memory, and several treatment notes of Plaintiff's own reports of improvement in managing external stressors from his medication and therapy. AR 552, 556, 560, 579, 640, 914, 917, 971. These records undermine Dr. McCormick's proposed marked limitations with Plaintiff's understanding, memory, sustained concentration and persistence, social interaction, and adaptation. AR 1396–

98. The ALJ reasonably rejected Dr. McCormick's opinions for their inconsistency with the record and did not err in doing so.

The ALJ also generally rejected the medical opinion evidence because of Plaintiff's activities of daily living, specifically Plaintiff's ability to manage his personal care, perform household chores, run errands, manage his finances, and follow instructions. AR 1416–20. The ALJ's reliance on Plaintiff's activities is unavailing. The self-report the ALJ specifically cited is not necessarily inconsistent with the medical opinions discussed, as they show Plaintiff found much of these activities difficult and hindered by his impairments. AR 320–27. The report is more so in line with the limitation expressed in the medical opinion evidence, thus in rejecting the medical opinions based on Plaintiff's activities, the ALJ erred. However, because the ALJ nonetheless provided other valid reasons to reject them and those reasons are supported by substantial evidence, any erroneous findings made by the ALJ are deemed harmless. *See Carmickle*, 533 F.3d at 1162.

## IV.   CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice.

Dated this 22nd day of September, 2023.

Tiffany M. Cartwright
United States District Court Judge